UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JD SOLAR SOLUTIONS, LLC, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| TRABANT SOLAR, INC. and | ) | |
| ROVSHAN SADE aka/RON SADE, | ) | |
| Defendants. | ) | |
| _____ | ) | |

NOW COMES the plaintiff, JD Solar Solutions, LLC ("Plaintiff"), by and through counsel, and complains of the defendants, Trabant Solar, Inc. ("Defendant Trabant") and Rovshan Sade aka/Ron Sade ("Defendant Sade")(together, "Defendants"), as follows:

**SUMMARY OF PLEADING**

Defendant Sade represented that he owned Defendant Trabant and agreed to sell Plaintiff twelve (12) solar tracking devices, which Plaintiff intended to use on a project for a third party, CNC Software, Inc. in Connecticut (the "Project"). Despite a multitude of verbal and written promises of the trackers' manufacture and time for shipment, Defendants took Plaintiff's deposit, sought and received more money, and never delivered the promised tracking devices. In February of 2016, when caught in a lie as he sought more money from Plaintiff upon the false pretense of a foreign manufacturer needing more funds

to complete the order, Defendant Sade arrogantly deemed the contract "terminated" and has refused to return Plaintiff's monies, which total at least $241,567.12.

**PARTIES AND JURISDICTION**

1. Plaintiff is a limited liability company organized under the laws of Connecticut with its principal office and place of business in Tolland County, Connecticut. Its members are James J. Dean, a citizen and resident of Tolland County, Connecticut and Damon T. Weiss, a citizen and resident of Monmouth County, New Jersey.

2. Defendant Trabant is a North Carolina corporation formed October 18, 2012. Defendant Trabant's Articles of Incorporation and Business Corporation Annual Reports, filed with the North Carolina Secretary of State, each lists its principal office mailing address <u>and street address</u> as 350 East Six Forks Road, Suite 17305, Raleigh, NC 27619-0620 (the "East Six Forks Address").

3. The East Six Forks Road address is the address of a customer service branch of the United States Postal Service, which adjoins a Kroger grocery store. Upon information and

belief, there is no "Suite 17305" located at 350 East Six Forks Road and that perhaps this is a rented post office box number that was or is a mailing address for Defendant Trabant.

4. Upon information and belief, there is no street address or business location for Defendant Trabant.

5. Defendant Sade is believed to be a resident of Wake County, North Carolina; however, his current address[1] is unknown. Defendant Sade has held himself out as the owner and president of Defendant Trabant.

6. The district court has jurisdiction over the parties.

7. The district court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8. Venue is proper in this district.

**RELEVANT FACTS**

9. In July of 2014, Plaintiff's member, Jim Dean, contacted Defendant Sade through an inquiry on the website for Defendant Trabant (www.trabantsolar.com) requesting information about "single axis trackers." Based on representations made, verbally

-3-

---

[1] Plaintiff has learned that another creditor of Defendant Sade served him in July of 2015 by publication in the Wake Weekly, a paper with general circulation in Wake County.

and in writing by Defendant Sade about Defendant Trabant's solar tracking device ("Trackers"), Plaintff requested a quotation of the price for ordering twelve (12) Trackers.

10. A little over a week after the original emails, on July 29, 2014, Defendant Sade sent a document entitled "Non-Binding Quotation" to Plaintiff, on which he quoted the price for thirteen Trackers and related goods in the amount of $393,315.00. In the email to which the Non-Binding Quotation was attached, Defendant Sade indicated that the price included shipping and all system components "(all US made by the way)."

11. After further discussions with Defendant Sade about Plaintiff's needs for the Project, on October 2, 2014 Defendant Sade sent a second quotation in a document entitled "Binding Quotation" and that document became the primary document for Plaintiff's order. The Binding Quotation set out items including twelve (12) Trackers and was for a total of $367,200.00. The purchased goods were to be shipped to the Project.

<u>Payments made by Plaintiff based on representations.</u>

12. There were discussions about an up front payment, and on October 3, 2014, Plaintiff transferred via wire the sum of **$40,000.00** to a Wells Fargo bank account in North Carolina pursuant to the instructions of Defendant Sade.

13. Then, on November 4, 2014, Defendant Sade sent an "updated quote" and indicated that the "fabricator is going to buy steel today" and he "would appreciate...another $50-60k this week." On November 10, 2014, Plaintiff transferred via wire the sum of **$60,000.00** to the Wells Fargo bank account in North Carolina pursuant to the instructions of Defendant Sade.

14. Three months later in February of 2015, Defendant Sade emailed that the fabricator called him and needed additional money and it was "better to keep him happy." Plaintiff subsequently learned that at that point there was no fabricator hired to produce the Trackers. Defendant Sade indicated that the fabricator's ("his") "request is $25,000." A few days later, Defendant Sade prompted Plaintiff about the request, and Plaintiff wired an additional **$25,000.00** February 17, 2015 to the Wells Fargo bank account in North Carolina pursuant to the instructions of Defendant Sade.

15. In March of 2015, Defendant Sade continued to request more funds. Defendant Sade asked Plaintiff to "[p]lease wire don't send a check," and on March 19, 2015, an additional **$25,000.00** was wired to the Wells Fargo bank account in North Carolina pursuant to the instructions of Defendant Sade. On March 20, 2015, Defendant Sade sent an email continuing to

-5-

discuss technical aspects of the Trackers as if manufacturing and delivery was going to occur.  Upon receiving Plaintiff's photographs showing the site work preparation that had been completed, Defendant Sade confirmed that the Trackers would clear infrastructure at the site.

    16.  On April 14, 2015, Defendant Sade sought another "$25k-30k."  Plaintiff refused due to Defendant Sade's request exceeding the original contract price for the Trackers. Defendant Sade then sent a revised contract price in which he added in software that had been part of the original quotation.  On April 17, 2015, Plaintiff wired another **$31,170.00** to the Wells Fargo bank account in North Carolina pursuant to the instructions of Defendant Sade.  This amount represented payment in full for the revised contract price, with the exception of $10,000.00 which was being retained pending satisfactory delivery.

<u>Plaintiff's short-term loans.</u>

    17.  With Defendant Sade making additional assurances of shipment once the manufacturing was complete, which was supposedly being done in Texas, and Plaintiff having paid $181,170.00, Plaintiff refused to pay more money on the contract.  On June 18, 2015, Defendant Sade said that he needed "an

-6-

additional $30,000" for control panels. Needing to fulfill its contract for the Project, Plaintiff agreed to make a short-term operating loan to Defendant Trabant. On July 17, 2015, pursuant to a letter confirming the terms of the loan and in anticipation of Defendant Sade's promised delivery of the Trackers in three (3) weeks, Plaintiff transferred via wire the sum of **$25,000.00** to a bank account in North Carolina pursuant to the instructions of Defendant Sade.

18. On October 20, 2015, Plaintiff agreed to make a second short-term operating loan to Defendant Trabant and transferred via wire the sum of **$5,000.00** to a bank account in North Carolina pursuant to the instructions of Defendant Sade.

The European Trip.

19. As the promised shipment dates passed with no shipments, Defendant Sade claimed the welds were bad and he could not ship the Trackers. Plaintiff pressed Defendant Sade for Plaintiff's members to visit the manufacturer and in September of 2015, Defendant Sade created a new ruse, blaming the delays on the manufacturing, which was "moved to Europe."

20. In an email September 26, 2015, Defendant Sade stated that the "Fabricator 'highly' recommended that I would inspect

-7-

the trackers for verification" and stated that it would "be October before I could go." Defendant Sade then stated that January 2016 delivery date would be better.

21. Defendant Sade continued to ask for more money, and on December 14, 2015, Plaintiff demanded that its members visit the site of the manufacturer (the "European Manufacturer") of the Trackers to confirm the progress. Defendant Sade reluctantly agreed, and scheduled a trip in late January to Berlin, Germany. In an email December 20, 2015, Defendant Sade wanted to go in advance "to verify the fabricated trackers and have them galvanized ahead of your arrival." Then, Defendant Sade via telephone said he needed **$6,000.00** more to get the project completed and shipped. These funds were also part of the short-term operating loan and were transferred December 22, 2015 via wire to a bank account in North Carolina pursuant to the instructions of Defendant Sade.

22. At Plaintiff's expense, Plaintiff's two members and Defendant Sade traveled to Berlin January 30, 2016 to visit the European Manufacturer. The cost of the trip, including round trip air fare and hotel costs, was **$7,127.12**.

23. The European Manufacturer was located in Poland, and

there, two (2) "prototype" trackers had been manufactured after apparently receiving design specifications from Defendant Sade the last week in December, 2015.  Then, two days later, Plaintiff's members were taken to a second manufacturer in Poland, which was clearly an introductory meeting.  In short, the Trackers had not been manufactured and statements made by Defendant Sade that the European Manufacturer had made the Trackers were false.

24.  Upon the return to the United States, Defendant Sade sought additional funds from Plaintiff to be paid to Telemond Holding, the second manufacturer visited in Poland. In an email dated February 12, 2016, Defendant Sade stated that "[h]ere is what Tobias sent me" and sent supposed wiring instructions to Telemond Holding in Poland requesting "$62,000 ASAP."

25.  On February 17, 2016 Plaintiff, increasingly suspicious, sought to receive an invoice and wiring instructions directly from Tobias Mueller of Telemond, and sent an email directly to Mr. Mueller.  Tobias Mueller replied and responded: "I'm a bit lost."  Plaintiff then sent Mr. Mueller another request for an invoice and verification of the wiring instructions (that had been provided by Defendant Sade, "what Tobias sent me"), and copied Defendant Sade on that email.

-9-

26. At this point it was obvious there was no order in place between the Telemond and Defendant Trabant or Defendant Sade. Defendant Sade's fraud was confirmed.

27. Yet, with continued arrogance, in an email "huff," Defendant Sade berated Plaintiff's members for contacting Tobias Mueller directly, and stated that the "contract [with Plaintiff was] hereby terminated."

28. Demands for a return of Plaintiff's monies sent to Defendants were ignored.

29. In addition to the monies it sent to Defendants and the travel costs, Plaintiff has incurred **$17,270.00** in damages through March 31, 2016 for financial damages suffered because of the delays with the Project. Additional damages are expected.

**FIRST CLAIM FOR RELIEF**

30. The allegations contained in the above paragraphs are incorporated and reasserted here.

31. Defendant Trabant has committed a complete breach of contract and has failed to supply the Trackers.

32. Plaintiff is entitled to rescind the contract, or recover for its breach, and have and recover a money judgment for the following damages:

    a. $181,170.00 (monies paid for the Trackers);

-10-

b. $36,000.00 (short term operating loans);

   c. $7,127.12 (travel expenses to Europe);

   d. $17,270.00 (damages incurred on Project).

**SECOND CLAIM FOR RELIEF**

33. The allegations contained in the above paragraphs are incorporated and reasserted here.

34. At all times relevant, Defendant Sade exercised complete dominion and control over Defendant Trabant and operated it as his alter ego. Defendant Sade failed to adequately capitalize Defendant Trabant, failed to maintain it as a separate entity, and failed to follow the corporate formalities required to maintain it as an entity. In addition, Defendant Sade is believed to have commingled its assets (namely Plaintiff's payments), directly or indirectly, to his own use and benefit.

35. Defendant Sade used his dominion and control to commit bad acts, including his repeated misrepresentations about the legitimacy of the operations of Defendant Trabant and the manufacture of the Trackers, all with the specific intention of securing the funds from Plaintiff and then creating enough of a semblance of operations to delay or avoid Plaintiff's ending of its contract and to prolong his use of Plaintiff's monies.

-11-

36. Defendant Sade misrepresented the history, operations, customers, ability to perform the work, and financial ability of Defendant Trabant when he made representations to Plaintiff, to its members, and in public documents.

37. Plaintiff is entitled to pierce the corporate veil of Defendant Trabant and hold Defendant Sade liable for all sums it paid.

### THIRD CLAIM FOR RELIEF

38. The allegations contained in the above paragraphs are incorporated and reasserted here.

39. The statements made by Defendant Sade to Plaintiff were false and were knowingly made to secure funds from Plaintiff.

40. The funds sent to Defendant Sade were not used towards the manufacture of Trackers, but rather were used by Defendant Sade for his personal benefit and/or to prop up and falsify the operations of Defendant Trabant to seek other monies or to delay other creditors.

41. The acts of Defendants were unfair and deceptive, affected commerce and caused actual damages to Plaintiff.

42. The acts of Defendants represent a pattern and practice as evidenced by an adversary proceeding filed July 14, 2009 in

Defendant Sade's personal bankruptcy in which claims for false pretenses, false representation, actual fraud, fraud as fiduciary, embezzlement, larceny, and willful and malicious injury were asserted by Solarpark Rodenaes, GmbH, a creditor.

43. The acts of Defendants constituted unfair acts and practices prohibited by North Carolina General Statute §75-1.1 et seq. and Plaintiff is entitled to recover treble damages and its attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays that it have and recover:

1. A money judgment against Defendants in the amount of $241,567.12, with interest;

2. Treble damages and attorneys' fees;

3. The costs of this action; and,

3. Such other and further relief as the Court may deem just and proper.

This 11th day of April, 2016.

> s/Bettie Kelley Sousa
> Bettie Kelley Sousa, NC Bar #9902
> Attorney for Plaintiff
> SMITH DEBNAM NARRON DRAKE
>   SAINTSING & MYERS, LLP
> 4601 Six Forks Road, Suite 400
> Raleigh, NC 27609
> Telephone: 919-250-2000
> Fax: 919-250-2100
> Email: bsousa@smithdebnamlaw.com

-13-